# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

Offshore Rental Ltd                          Civil Action No. 16-01090

versus                                                Magistrate Judge Carol B. Whitehurst

LA. Scrap International et al                  By Consent of the Parties

## MEMORANDUM RULING

Before the Court is a Motion For Partial Summary Judgment and Motion In Limine To Exclude Evidence of Collateral Sources ("the Motions"), filed by Plaintiff, Offshore Rental, LTD. ("Offshore Rental") [Rec. Doc. 191]. Defendants, Hartford Fire Insurance Company ("Hartford"), Louisiana Scrap International, Inc. ("Louisiana Scrap"), and Southern Recycling, L.L.C. all opposed the motion [Rec. Docs. 198, 212, and 218]. Plaintiff filed replies to each defendant's opposition. [Rec. Docs. 223; 229; 231]. Oral argument was conducted by the Court with Hartford, Louisiana Scrap and Southern Scrap (collectively "Defendants") on June 25, 2019. For the reasons that follow the Court will deny the Motions.

## I. BACKGROUND

Offshore Rental filed this action alleging that "prior to August 2015 and on numerous occasions in the months following," defendant, Travis Cormier, the former employee of Offshore Rental, conspired with defendants, Anthony Harris and Floyd Tolivour, (collectively "Individual Defendants") to misappropriate and transport Offshore Rental's equipment (the "Property") from its facility in Golden

Meadow, Louisiana to scrapyards in Lafayette, Louisiana, owned and operated by Louisiana Scrap and Southern Recycling.[1] *R. 60.* In the Complaint, Plaintiff further alleges that the defendant scrapyards and their personnel took possession of the Property and converted it for cash despite the fact that they knew or should have known it did not belong to the Individual Defendants. *Id.*

Offshore Rental contends that the defendants violated the provisions of Louisiana Scrap Metal Recyclers Law, La. R.S. 37:1961, *et seq.*, specifically alleging claims of Conversion, and/or Unjust Enrichment against them. *Id.* Plaintiff further contends it suffered damages totaling $2,838,618.53 in connection with the loss of the following Property: 114 cutting boxes, 19 offshore baskets, 2 basket containers, 4 grocery boxes, 2 single pallet boxes, and 85 slings. *R. 41.* Plaintiff also seeks all interest, costs, and all other relief to which it is entitled. *R. 60.*

Based on the evidence before the Court, The Modern Group, LTD. ("The Modern Group") procured an insurance policy from Hiscox Insurance Company Inc. (the "insurer") to cover *inter alia* the loss of property through theft for up to $5,000,000 less a $75,000 deductible amount ("the Policy"). *R.191-3, Declaration of Anne Figuieras, Director of Security for the Modern Group, Ltd*. The Modern Group paid a premium to the insurer for the coverage afforded by the Policy. *R.191-*

---

[1] Plaintiff also named as Defendants the individual members/managers of Louisiana Scrap, John Rongey, and Kathy Rongey as well as insurers, Hartford and Travelers Property Casualty Company of America *Id.*.

*3, Decl. of Figuieras*. The Modern Group made a claim under the Policy for the Property at issue. *Id.* The insurer made an initial payment (less the Policy's deducible amount) to The Modern Group on June 30, 2016. *Id.* An additional payment under the Policy was made by the insurer to The Modern Group for an amount totaling approximately $2,100,000. *R. 212*. On November 22, 2018, the insurer and The Modern Group executed a Claim Release in which the insurer waived any subrogation rights against The Modern Group.[2] *R. 213-3*.

Offshore Rental filed the Motions before the Court, *R. 191*, contending that "Offshore Rental (through one of its partners and its parent entity) made a claim under [the Policy] which included coverage for losses sustained by Offshore Rental due to theft." *R. 191-1, p. 1*. Offshore Rental further contends that it "was paid money under the terms of the Policy and ultimately reached a settlement with [the insurer] to resolve the insurance claim." *Id.*

## II. THE PARTIES CONTENTIONS

Plaintiff filed the instant motion for partial summary judgment stating that the Court should rule that Defendants are not entitled to any offset or credit against it

---

2 The Policy contained the following subrogation clause:
    V. Transfer of Your Rights of Recovery Against Others to Us
    You must transfer to Us all Your rights of recovery against any person or organization for any loss You sustain and for which We have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

R. 191-3 at p. 77.

under Louisiana's Collateral Source Rule.   Plaintiff also moves in limine to exclude any evidence of collateral source from being introduced by Defendants at the trial of this matter.

Defendants filed separate oppositions to Plaintiff's motions asserting various arguments as to why the Court should deny the Motions. At the oral argument Defendants indicated that while they separately addressed specific defenses to avoid duplicative arguments, each Defendant adopts all defenses.

Hartford argues that this case does not come within the Collateral source rule because (1) the Policy contains a subrogation clause transferring all recovery rights to the insurer; and, (2) The Modern Group, not Plaintiff, paid the insurance premium covering the Property, submitted the insurance claim for damages allegedly resulting from the loss of the Property, and received settlement payments from the insured relating to the Property.

Louisiana Scrap argues that the Collateral Source rule does not apply because (1) the insurer made an initial payment of $1.39 million on June 30, 2016 without a waiver of subrogation, and, therefore, Plaintiff's claim was assigned to the insurer pursuant to the language in the Policy; and (2) the application of collateral source to the insurance payment at issue in this case fails to serve the two major policy goals of the collateral source rule—tort deterrence and discouraging double recovery; and (3) because Offshore Rental did not pay for or suffer some diminution in its

patrimony for the benefit from the insurance payment, a windfall or double recovery will result, contrary to the application of the collateral source rule.

Southern Recycling argues that (1) the exceptions to the collateral source rule make the insurance payment admissible in this case in order to: *i*. show Plaintiff's lack of entitlement to damages (i.e. loss of income, loss of rental proceeds and costs of replacing the Property), *ii*. prove its affirmative defenses (i.e. failure to mitigate, intervening and superseding cause, waiver, fault, latches and/or estoppel), *iii*. show value of the Property, and, *iv*. impeach Plaintiff's credibility; (2) the application of collateral source to the insurance payment at issue in this case will not further the major policy goals—tort deterrence and discouraging a windfall; and (3) the insurer received subrogation rights in the insurance payment pursuant to the subrogation provision in the Policy and the Collateral source rule is inapplicable.

### III. LEGAL STANDARD

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d

5

395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc*., 224 F.3d 382, 394 (5th Cir.2000).

## IV. DISCUSSION

**1. Motion For Partial Summary Judgment**

Offshore Rental moves the Court to grant its motion for partial summary judgment arguing that Defendants are not entitled to any offset or credit under the collateral source rule. Here, because the Court's jurisdiction is based on diversity of citizenship, the Court must apply Louisiana substantive law. *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Since Louisiana's Collateral Source Rule is substantive, the Court applies it here. S*ee Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 425–26 (5th Cir. 2008).

Even though originating as a common law doctrine, the collateral source rule has been recognized under the jurisprudence of this state. The Court is guided in this case by the Louisiana Supreme Court's rulings on the collateral source rule. In *Bellard v. American Central Ins. Co.*, 980 So.2d 654 (La. 2008), the Louisiana Supreme Court defined the collateral source rule and its jurisprudential foundations:

> [T]he rule provides that, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. Under this well-established doctrine, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer. In short, the tortfeasor is not allowed to benefit from the victim's foresight in purchasing insurance and other benefits.

> Several public policy concerns support the collateral source doctrine. The concern most often voiced is that the tortfeasor should not gain an advantage from outside benefits provided to the victim independently of any act of the tortfeasor. The objective in this regard is to promote tort deterrence and accident prevention. Another concern advanced that, absent the collateral source rule, victims would be dissuaded from purchasing insurance or pursuing other forms of reimbursement available to them.

*Id.* at 668.

In *Bozeman v. State,* 879 So.2d 692 (La. 2004)[3], the Louisiana Supreme Court addressed the application of the collateral source rule to medical expenses "written-off" or contractually adjusted by health care providers pursuant to the federal Medicaid program. *Id.* at 693. The court held that because Medicaid recipients do not provide any consideration for the benefits they receive, they are unable to recover Medicaid "write-off" amounts under the collateral source rule. *Id.* at 705–06. However, the Court further held that "in those instances where plaintiff's patrimony has been diminished in some way in order to obtain the collateral source benefits, then plaintiff is entitled to the benefit of the bargain, and may recover the full value of his medical services, including the 'write-off' amount." *Id.* at 706. Thus, the *Bozeman* court held that a victim whose medical expenses were paid by Medicaid, a collateral source to which the victim did not directly contribute, could not recover the "write-off" amounts. *See Hines v. Southern States Offshore, Inc.*, 2017 WL

---

[3] In *Bozeman*, the court held that under the collateral source rule, plaintiff's damages did not include the amount that health-care providers wrote off when accepting Medicaid as payment in full.

5560167, at *6 (W.D.La., 2017). The court further explained, however, "[w]here insurance is provided by the employer, then that fringe benefit is in the nature of deferred compensation. The deferred compensation would have been available to him as cash per paycheck, but for the existence of the deferred compensation plan. Likewise, the benefits of the deferred compensation would have been available but for the injury." *Bozeman*, 879 So. 2d at 699.

Thereafter, in *Bellard*, 980 So. 2d at 670, the UM carrier for the plaintiff's employer sought a credit for disability wage and medical benefits paid by the employer or its WC carrier. As explained in *Bozeman*, the court emphasized that the plaintiff had not given consideration for WC benefits: "[U]nlike sick leave, annual leave, or employer-provided health insurance, workers' compensation benefits cannot be considered a fringe benefit in the nature of deferred compensation that would otherwise be available to the plaintiff but for his injury. To the contrary, workers' compensation benefits are required by law...." *Id*.

In *Hoffman v. 21st Century North America Insurance Co*. 209 So.3d 702 (La. 2015), the court addressed the issue of whether a plaintiff can invoke the collateral source rule to recover medical expense "write-offs" negotiated by the plaintiff's attorney, without the plaintiff having diminished his patrimony. Declining to extend the collateral source rule to the attorney-negotiated medical discounts at issue, the Court reiterated that "in both *Bozeman* and *Bellard*, we emphasized a

9

fundamental consideration for application of the collateral source rule, in addition to tort deterrence, is whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule." *Id*. at 706 (citing *Bellard* at 669).

Finally, in the most recent case, *Simmons v. Cornerstone Investments, LLC*, -— So.3d -— 2019 WL 2041377, at *4 (La., 2019), the Louisiana Supreme Court declined to apply the collateral source rule by allowing a plaintiff to introduce only evidence of the "written off" amounts and prohibiting the plaintiff from introducing the full amount of medical expenses billed. Noting that "we take a strict view of the requirements for diminishing a plaintiff's patrimony," the court stated, "it cannot be said Plaintiff's patrimony was diminished in any way when he did not actually incur these fictional expenses [full amount billed]." *Id.* "Therefore, any recovery in addition to the reduced amount of medical bills would be a windfall to Plaintiff and against the rationale behind the collateral source rule." *Id.* at *5.

Review of the jurisprudence cited above clearly leads to the conclusion that two primary considerations must guide this Court's determination with respect to the collateral source rule: (1) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some

diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule; and, (2) whether application of the rule will further the major policy goal of tort deterrence. *See i.e. Limberg v. Starr Indemnity & Liability Co.*, 2018 WL 3383020, at *3 (E.D.La., 2018); *Lockett v. UV Ins. Risk Retention Grp., Inc.*, 180 So. 3d 557, 570 (La. App. 5 Cir. 11/19/15) (citing *Bellard* at 668).

While the foregoing supreme court cases do not address the issue in this case, the Court will employ the reasoning of this jurisprudence to determine whether the collateral source rule applies in order to prevent Defendants from receiving an offset or credit against Offshore Rental's alleged damages/recovery based on the insurance proceeds in question. First, contrary to Offshore Rental's contentions, the evidence indicates that The Modern Group procured and paid the premiums for insurance of the Property, The Modern Group made the insurance claim for the Property and The Modern Group received the insurance payments for the Property. Although Offshore Rental contends it is a "partner" of The Modern Group[4], and is therefore the proper party to make the claim that the collateral source rule should apply, there is no support in the record that Offshore Rental was included in the insurance Policy as an insured in order to be entitled to the insurance proceeds. Rather, the Declarations provide that the only "Named Insured" is "The Modern Group Ltd, PO Box 790,

---

4 *R. 42-3.*

Beaumont, Texas 77704-0790." *R. 191-3. Hiscox Commercial Crime Supplemental Declarations, Bate Stamp # 00644; Crime Insurance, Bate Stamp # 00714*. Hence, there is no evidence that Offshore Rental either paid for such insurance benefits or suffered some diminution in its patrimony because of the availability of the insurance benefits. As such, Offshore Rental is not entitled to the protections of the collateral source rule.

The Court finds that the rationale underlying the collateral source rule does not apply under the facts and circumstances in this case. Accordingly, Offshore Rental's motion requesting that the Court find Defendants are not entitled to any offset or credit against it under Louisiana's collateral source rule will be denied.[5]

**2. Motion in Limine**

In its motion in limine Plaintiff raised the same arguments as it did in its motion for partial summary judgment on the issue of insurance payments for loss of the Property. The collateral source rule is both a substantive rule and an evidentiary rule. *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994) (citing *Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 929–30 (5th Cir. 1992)). The analysis of the evidentiary rule replicates the analysis of the substantive rule. *See, e.g., Phillips*, 953 F.2d at

---

5 During the June 25, 2019 hearing the Court indicated it would allow Louisiana Scrap to file a sur-reply listing the two citations discussed but not cited in the briefs. The Court also advised Plaintiff that it could respond to Louisiana Scrap's sur-reply. Both parties filed the permitted briefs. *R. 235, 236*. Based on the Court's holding that the collateral source rule is not applicable under the facts and circumstances here, the Court further finds that the parties' sur-replies related to subrogation are of no consequence in this case. Further, the Court finds that the issue of whether or not the Property was a gift or gratuity is not supported in the record.

931–33. Therefore, for the reasons discussed above with regard to the motion for partial summary judgment on the issue of the admissibility of insurance proceeds recovered by The Modern Group for the Property, the Court denies Plaintiff's motion in limine to exclude such evidence.

## IV. CONCLUSION

In light of the foregoing, Offshore Rental's Motion for Partial Summary Judgment that Defendants are not entitled to any offset or credit against it under Louisiana's Collateral source rule and the Motion in Limine regarding the insurer's payments to The Modern Group, Ltd. for loss of the Property are **DENIED**.

THUS DONE AND SIGNED this 2nd day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE